# IN THE COURT OF APPEALS OF IOWA

No. 16-1013
Filed March 22, 2017

**LUANA SAVINGS BANK,**
    Plaintiff-Appellant,

**vs.**

**RONALD CASPERSEN,**
    Defendant-Appellee.
_____

Appeal from the Iowa District Court for Clayton County, Margaret L. Lingreen, Judge.

A bank appeals the district court's ruling in a breach-of-contract action. **REVERSED AND REMANDED.**

Erik W. Fern of Putnam, Fern & Thompson Law Office, PLLC, Decorah, for appellant.

Zachary C. Herrmann, Elkader, for appellee.

Considered by Vogel, P.J., and Tabor and Mullins, JJ.

**VOGEL, Presiding Judge.**

Luana Savings Bank (the Bank) appeals from the district court's ruling in a breach-of-contract action instituted by the Bank against Ronald Caspersen. Specifically, the Bank argues Caspersen, who was a co-signor on a promissory note, was not entitled to a credit for the surplus from a foreclosure sale of the home of the other borrowers. Caspersen asserts the note was secured by a mortgage on the home and, thus, he was entitled to credit for the surplus amount. Because we conclude the note was not secured by the mortgage on the home, we reverse the ruling of the district court and remand for entry of judgment consistent with this opinion.

### I.    Background Facts and Proceedings

In early 2009, William and Shelly Mack contacted the Bank about financing for the purchase of a home at 209 Truman Street in Luana, Iowa. Because the Macks were not able to fund the entire purchase price of the home on their own, the Bank made two loans to the Macks on April 18, 2009. One loan, for $71,350, signed only by the Macks, was secured as part of an open-end mortgage and included only the Macks as mortgagors. The mortgage instrument contained the following language:

> For good and valuable consideration, the receipt and sufficiency which is acknowledged, and to secure the Secured Debt (defined below) and Mortgagor's performance under this Security Instrument, Mortgagor grants, bargains, warrants, conveys, and mortgages to Lender the Following described property:

followed by a legal description and the address of the property. Under the "Secured Debt And Future Advances" section of the mortgage agreement, "Real

Estate Loans of $71,350.00 & $17,000.00 for William D and Shelly A Mack Dated 4/18/09" was listed. The second loan, for $17,000, was made on a consumer credit transaction form, and signed by the Macks and Caspersen. It contained this language: "Security: This note is secured by (describe separate document by type (e.g., deed of trust) and date)." The document then listed three vehicles but made no mention of the mortgage instrument. In the "Purpose" section of the agreement, "Balance Of Home Purchase" was listed. The note also contained a section entitled "Other Security," which read: "Any present or future agreement securing any other debt I owe you also will secure the payment of this loan." It further stated: "Obligations Independent. I understand that my obligation to pay this loan is independent of the obligation of any other person who has also agreed to pay it."

The Macks struggled to make payments on their loans and, on March 17, 2011, signed a Disclosure and Notice of Cancellation, which contained this provision: "If you agree to a voluntary foreclosure under this procedure you will not have to pay the amount of your debt not covered by the sale of your property but you also will not be paid any extra money, if any, over the amount you owe." *See* Iowa Code § 654.18(1)(f) (2010). They also signed an agreement with the Bank to initiate an alternative nonjudicial voluntary foreclosure procedure in accordance with Iowa Code section 654.18. The Macks agreed to convey all of their interest in the real estate to the Bank, and the Bank waived any right to a deficiency claim against the Macks. This was followed by a warranty deed, conveying title of the real estate to the bank with the phrase "given in lieu of foreclosure." An affidavit accompanying the deed declared "the release of

personal liability of the parties named above." The Macks were the only parties who agreed to and signed the Disclosure and Notice of Cancellation, the Agreement for Alternate Nonjudicial Voluntary Foreclosure, and the affidavit. In June 2011, the bank sold the home for $80,000.

Caspersen continued to make weekly payments on the $17,000 loan until June 2015, when the balance of the loan was $12,279.24. However, because a balloon payment due in April 2014 was defaulted on, the Bank filed a petition on August 1, 2014, naming the Macks[1] and Caspersen as defendants, alleging breach of contract and seeking judgment for the remaining balance of the note plus interest. Caspersen did not file an answer. Nonetheless, a bench trial proceeded against Casperson. He resisted the Bank's attempt to secure a judgment against him for the remaining balance on the $17,000 loan, asserting it was also secured by the mortgage on the real estate. He also claimed that the outstanding balance of that loan should be offset by the surplus from the sale of the real estate. The district court agreed with Caspersen based on its conclusions that the "other security" portion of the $17,000 note incorporated the open-end mortgage agreement into the note and that the parties intended the $17,000 note to be secured by the mortgage, as well as the primary promissory note. The court credited the surplus from the sale of the real estate to the balance of Caspersen's obligation and entered judgment for the Bank in the amount of $3779.24, plus interest. Following a motion to amend and enlarge filed by Caspersen, the court concluded the surplus should have been applied immediately following the sale and the balance and interest must be recalculated

---

[1] On June 8, 2015, the Bank dismissed the Macks as defendants.

accordingly. The court amended its order and awarded judgment in favor of the Bank for $918.05, plus interest from June 2015. The Bank appeals.

## II.     Standard of Review

We review breach-of-contract claims for correction of errors at law. *NevadaCare, Inc. v. Dep't of Human Servs.*, 783 N.W.2d 459, 465 (Iowa 2010). The district court's findings of facts are binding if they are supported by substantial evidence; however, we are not bound by the district court's legal conclusions and application of legal principles if we find them to be erroneous. *Id.*

## III.     The $17,000 Promissory Note

The Bank argues Caspersen was not entitled to an offset from the sale of the real estate to the amount owed on the $17,000 note because the note was not secured by the mortgage on the real estate, the note does not reference the mortgage, and Caspersen was not a mortgagor on the mortgage instrument. Caspersen argues the mortgage was incorporated into the note as security based on the intent of the parties and the "other security" portion of the note.

"A mortgage is subject to the principles of interpretation and construction that govern contracts generally." *Soults Farms, Inc. v. Schafer*, 797 N.W.2d 92, 107 (Iowa 2011.) "The cardinal rule of contract interpretation is to determine what the intent of the parties was at the time they entered into the contract." *Pillsbury Co. v. Wells Dairy, Inc.*, 752 N.W.2d 430, 435 (Iowa 2008). "Words and other conduct are interpreted in the light of all the circumstances, and if the principal purpose of the parties is ascertainable it is given great weight." *Fausel v. JRJ Enters., Inc.*, 603 N.W.2d 612, 618 (Iowa 1999) (citation omitted). While

extrinsic evidence can be considered, "the words of the agreement are still the most important evidence of the party's intentions at the time they entered into the contract." *Pillsbury*, 752 N.W.2d at 436.

Upon our review of the note, we cannot conclude the parties intended to attach a security interest in the real estate to the second loan through the mortgage instrument. To start, the note lists three vehicles as security for the additional funds and makes no mention of being secured by a separate mortgage instrument on the real estate. The note does not contain the legal description, address, or any other identifying information of the property. The note neither explicitly nor implicitly references the mortgage instrument. Simply put, the language of the note does not evince any intent on behalf of the parties to attach a mortgage on the real estate as security for the secondary, $17,000 loan.

The sole reference to the property is in the "purpose" section of the note which reads "balance of home purchase." While we agree this shows an understanding that the money from the second loan was to be used toward the purchase price of the home, we do not agree that necessarily begets the conclusion that the real estate was also security for the note. The existence of the second loan itself weighs against such a conclusion. That is, if the Bank was satisfied that a mortgage on the real estate was sufficient security for the entire purchase price, there was no reason shown in the record why it would require the additional $17,000 loan with further security in the form three vehicles and of Caspersen as a co-signor. Moreover, under the "Remedies" provision of the second note—the consumer credit transaction—the Bank could have attached the secured collateral, that is, the vehicles, or as they did here, seek to collect the

amount past due from the co-signer, Caspersen, under the "Obligations Independent" provision noted above.

The district court examined the note and the actions of the parties as a whole and determined the "other security" provision of the note incorporated it into the mortgage. We disagree. While the language of the "other security" provision is non-specific, we do not read it to sweep the second note, which was separately secured and guaranteed by Caspersen, into the mortgage agreement. It is difficult to see how the phrase "Any present or future agreement securing any other debt *I* owe *you* also will secure the payment of this loan" could link the mortgage agreement and Caspersen. (Emphasis added.) Caspersen was not a party to the mortgage instrument in any capacity. Hence, Caspersen, who was merely a co-signor on a second note, had no present or future agreements with the Bank securing any other debt that would fall into the language of that provision.

Casperson was not a party to the mortgage, the foreclosure agreement, the disclosure agreement, or the affidavit. There is no evidence that he was treated as a mortgagor at any time during the process or that he attempted to assert any rights as a mortgagor. *See generally* Iowa Code § 654.18 (explaining the rights of *mortgagors* in an alternative nonjudicial voluntary foreclosure procedure). Additionally, the note he co-signed lists three vehicles as the only security and does not contain any language that links the note to the mortgage instrument. Simply stating that the purpose for additional borrowed funds was for the "balance of home purchase" did not create a security interest in the real estate.

Based on our interpretation of the language of the $17,000 note and in light of all the circumstances, we conclude it was not the intent of the parties to attach the mortgage on the real estate as a security interest to the secondary, $17,000 note. Thus, Caspersen was not entitled to an offset for the surplus amount from the sale of the real estate.

We therefore reverse the district court's ruling and remand for entry of judgment for the $12,279.24 plus interest at 7.4 percent from June 4, 2015.

**REVERSED AND REMANDED.**